Argued and submitted November 16, 2009, judgment modified to award wife indefinite spousal support of $2,500 per month, effective March 1, 2008, otherwise affirmed February 17, both petitions for review denied July 8, 2010 (348 Or 523)

In the Matter of the Marriage of

John Patrick BOLTE,
*Petitioner-Respondent,*
*and*

Mary Elizabeth BOLTE,
*Respondent-Appellant.*

Benton County Circuit Court
0730310; A139055

226 P3d 116

Pamela S. Hediger argued the cause for appellant. With her on the briefs was Evashevski, Elliott, Cihak & Hediger, P.C.

J. Michael Alexander argued the cause for respondent. With him on the brief was Swanson, Lathen, Alexander, McCann & Prestwich, PC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Wife appeals from a judgment of dissolution. She assigns error to the trial court's property division and spousal support award. We write only to address wife's assignment of error relating to spousal support in which she asserts that the trial court erred in awarding her $1,500 per month in indefinite support.[1] On *de novo* review, ORS 19.415(3) (2007), we conclude that the trial court's spousal support award was not just and equitable and modify the dissolution judgment accordingly.

We take the following relevant facts from the record. Husband and wife were born in 1957. They were married for 22 years. Wife gave up employment opportunities to further husband's education and career, maintain the marital home, and care for the parties' children. Before the dissolution, the parties' household income was approximately $14,000 per month. Husband's employer provided benefits, including health insurance, for both husband and wife. The parties' assets included a 100-acre farm in Philomath, property on the Alsea River in Benton County, retirement accounts, stocks, and personal property, including boats, a laptop computer, and a piano.

In 2008, at the time of trial, husband was earning approximately $10,700 per month with substantial benefits including health insurance, paid leave, and retirement contributions. He worked as a department head and tenured professor at Oregon State University. Wife was earning approximately $2,700 per month, with no benefits, as a physical therapist. Due to the dissolution, she could no longer expect to be covered by husband's health insurance, and it would cost wife approximately $750 per month to obtain such insurance. An additional source of income was the parties' farm in Philomath, which the trial court awarded to wife, subject to the requirement that she pay husband $415,000— half of the stipulated value of the farm—within six months of the dissolution judgment.[2] The farm produced income of

---

[1] We reject wife's assignment of error concerning the property division without discussion.

[2] If she failed to do so, husband would be given two months to pay wife $415,000 and receive the farm. If husband failed to pay wife within two months, the

approximately $600 per month. Including the farm income, wife's income was approximately $3,300 per month.

At trial, husband argued that his income for spousal support purposes should be considered to be $7,900 per month, because, even though he earned an extra $2,800 per month for his administrative work as a department head, his base monthly income for his work as a professor was only $7,900. According to the record, husband was appointed to serve as a department head in 2005. Shortly thereafter, the parties separated and began maintaining separate households. Although husband's appointment had been renewed annually, he considered the appointment to be temporary.

Husband accepted the extra workload from the department head position to save money for the children's college expenses. He explained that, because the parties' children were approaching college age, the extra income from the department head position would help the parties maintain their relatively frugal and debt-free lifestyle. By the time of dissolution, the parties had accumulated substantial savings in their children's college savings accounts. Ultimately, the trial court concluded that it was equitable to set husband's income at $10,700 for purposes of calculating spousal support.

Husband further argued that wife was underemployed and that wife's income should be set at what she could be earning rather than at what she actually earned at her current jobs. Wife had specialized experience in pediatric and end-of-life physical therapy. She worked for Benton Hospice, a nonprofit organization, and she also worked for a pediatric physical therapy business, Pediatric Therapy Professionals (PTP), which she had established in partnership with three other pediatric physical therapists. Husband's expert testified that wife might be able to make more money and receive better benefits by working for a hospital or other entity in the Corvallis area. Husband also argued that wife was working part time and that her income should be set at what she could earn if she was working full time.

---

farm would be sold. The trial court determined that a spousal support award of $2,000 per month indefinitely would be just and equitable if wife sold the farm.

The trial court found that, for the purposes of calculating spousal support,

> "[wife] is suitably employed, that while this may not be the highest paying position that she could take[,] this is certainly important work that she has undertaken, and there's no reason that she'd be required to abandon the end-of-life or pediatric physical therapy care that she provides."

The trial court awarded indefinite spousal support of $1,500 to wife for spousal maintenance, effective March 1, 2008. Wife appeals.

On appeal, wife contends that the trial court erred in concluding that a spousal support award of $1,500 per month was just and equitable under the circumstances. According to wife, a just and equitable spousal support award would be $4,000 per month for 24 months, $3,500 for the next 36 months, then $3,000 per month indefinitely thereafter.

Husband responds that spousal support of $1,500 per month is just and equitable. He reiterates his contention that wife seeks additional spousal support because she was underemployed—that is, she worked part time in physical therapy specialty areas that do not maximize her income. He also contends that wife seeks additional spousal support to allow her to afford the mortgage on the Philomath farm that she must obtain so that she can pay husband's $415,000 interest in that property within six months of the dissolution. According to husband, an award of spousal support for that purpose would inequitably force husband to fund his own equalizing judgment.

■ Before turning to wife's contention concerning the amount of spousal support, we address husband's arguments. With respect to husband's argument that wife is underemployed, we agree with the trial court's determination that wife was suitably employed. Wife is not, for spousal support purposes, required to work for the highest paying employer in her region or in the most lucrative specialty areas of her field. Moreover, because, as we explain below, we find that wife was working full time, we do not find any basis upon which to impute extra income to wife.

According to wife, she worked 15 hours per week with Benton Hospice and at least 25 hours per week at PTP. Husband argues that wife worked less than 25 hours per week at PTP, pointing to billing records that indicate that wife billed only approximately 20 to 30 hours of patient visits per month. Wife testified that she generally worked at least 40 hours per week. She also testified that she might work for two or three hours at PTP for every billable hour with a patient and described the various medical and administrative tasks that occupied her nonbillable time. In addition to her testimony, wife provided a chart that documented the amount of time that she worked at Benton Hospice and PTP in a specific one-week period. The chart indicated that, in that week, wife worked at Benton Hospice for 14.5 hours and she worked at PTP for more than 30 hours—only eight of which were billable hours. The record supports wife's contention that she was working full time. Thus, contrary to husband's contentions, we conclude that wife was working full time and we decline to impute extra income to wife. *See Parker and Parker*, 187 Or App 565, 567 n 1, 69 P3d 811 (2003) (rejecting trial court's imputation of extra income to the wife where the extra income was not presently available to the wife).

■ With respect to husband's contention that it is inequitable to consider wife's need to obtain a mortgage to pay husband the $415,000 equalizing judgment for the farm, we conclude that it is appropriate to consider all of the parties' financial circumstances—including wife's need to obtain and repay a mortgage loan to be able to afford to pay husband $415,000 within six months of the judgment—in determining a just and equitable amount of spousal support. *See Potts and Potts*, 217 Or App 581, 590, 176 P3d 1282 (2008) (considering the husband's need to obtain and repay financing to pay an equalizing judgment to the wife in determining a just and equitable amount of spousal support).

■ Finally, we turn to wife's contention that spousal support in the amount of $1,500 per month is not just and equitable in this case. ORS 107.105(1)(d) guides our analysis in that regard and requires that a spousal support award be "just and equitable" under the totality of the circumstances. *Morales and Morales*, 230 Or App 132, 140, 214 P3d 81

(2009). Specifically, ORS 107.105(1)(d)(C) provides a nonexclusive list of factors that we consider in establishing a just and equitable support award for spousal maintenance support, which include (1) the duration of the marriage; (2) the standard of living established during the marriage; and (3) the parties' age, income and earning capacities, training and employment skills, work experience, and financial needs and resources.

Accordingly, we view the circumstances as a whole but, in this case, take particular note of three important considerations. First, this was a long-term marriage and the parties are approaching retirement age. Second, husband's income and earning capacity are substantially higher than wife's. In that regard, contrary to husband's assertions on appeal, we agree with the trial court that husband's available income for purposes of computing spousal support is $10,700, which is substantially higher than wife's present income of $3,300 per month. Third, as a result of the dissolution, wife will have new reasonable expenses. For example, unlike husband who will continue to have health and retirement benefits through his employer, wife will now have a monthly health insurance premium of $750 and will need to save for her eventual retirement.

In sum, without a substantial award of spousal support, wife's standard of living following the dissolution will be significantly diminished when compared to the parties' pre-dissolution lifestyle, which was based on a monthly household income of approximately $14,000. *See, e.g., Cullen and Cullen,* 223 Or App 183, 193-94, 194 P3d 866 (2008) (in setting spousal support, the court seeks to allow both spouses to maintain a standard of living that is comparable to their pre-dissolution lifestyle). Further, a significant spousal support award will not have the effect of disproportionately affecting husband's standard of living. *See Stutz and Stutz,* 156 Or App 146, 151-52, 965 P2d 456 (1998) (weighing proportionate hardship on each party in establishing a just and equitable amount of support). Thus, in light of wife's limited monthly income of approximately $3,300 and her increased monthly expenses, including health- and retirement-related expenses, we conclude that the trial court erred in awarding spousal support of only $1,500 per month and that an award of $2,500

per month is just and equitable under the totality of the circumstances.

Judgment modified to award wife indefinite spousal support of $2,500 per month, effective March 1, 2008; otherwise affirmed.