Argued and submitted March 19, 2010, on appeal, reversed and remanded for entry of judgment (1) awarding wife compensatory spousal support of $2,000 per month for eight years and (2) maintenance spousal support of $5,000 per month for three years, $4,000 per month for the next three years, and $3,000 per month thereafter; otherwise affirmed; affirmed on cross-appeal February 16, 2011

## In the Matter of the Marriage of

### Brian James MORRISON,
*Petitioner-Respondent*
*Cross-Appellant,*

*and*

### Donna C. MORRISON,
*Respondent-Appellant*
*Cross-Respondent.*

### Jackson County Circuit Court
### 073292D3; A139817

247 P3d 1281

Douglas J. Richmond argued the cause for appellant-cross-respondent. With him on the briefs was Kellington, Krack, Richmond, Blackhurst & Glatte, LLP.

Edward H. Talmadge argued the cause for respondent-cross-appellant. With him on the brief was Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Wife appeals a general judgment of dissolution, contending that the trial court erred in setting the amount and duration of various components of its award of spousal support to wife, and husband cross-appeals the supplemental judgment, contending that the trial court erred in awarding wife her attorney fees. We reject husband's contentions on cross-appeal without discussion. On *de novo* review, ORS 19.415(3) (2007),[1] we conclude that wife is entitled to compensatory support, ORS 107.105(1)(d)(B), and indefinite maintenance support, ORS 107.105(1)(d)(C).[2] Accordingly, we modify the judgment on appeal and affirm on cross-appeal.

This case involves a long-term marriage of over 20 years. At the time of trial, husband was a 47-year-old cardiologist in private practice at a southern Oregon clinic, and wife was a 46-year-old homemaker, who was working to obtain a master's degree in biology at Southern Oregon University. The parties have four children, ranging in age from 19 to 13. The oldest child was attending college, and the three younger children were living with wife.

Husband and wife met while in college. Following their graduation in the early 1980s, wife moved to Chicago, where husband began attending medical school. However, they lived separately for the next two years. For approximately a year before the parties' marriage in 1985, wife worked as a medical technologist at a local hospital. After the parties' marriage and during the final two years of husband's schooling, wife worked at medical research laboratories, earning, as husband described it, the parties' "sole income" apart from his school loans, "a few odd jobs," and his "tuition scholarship waiver." According to husband, wife's income was the "predominant" source of income for the parties during that time.

---

[1] ORS 19.415 was amended in 2009, and those amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, § 3. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of the statute.

[2] The text of the statutes is set out below, 240 Or App at 667, 670-71.

After husband graduated from medical school in 1987, the parties moved to Denver, where he began a three-year residency and internship in internal medicine. During husband's internship, the parties had their first two children. Although husband earned a salary of approximately $25,000, wife worked full time until the birth of their first child. Thereafter, she worked part time. In 1990, after husband had finished his internship and residency, he worked as an internist for a year, primarily to help reduce the parties' debts.

In 1991, husband began his training in cardiology. The parties moved to Boston so that husband could complete a three-year paid fellowship. Husband earned a modest salary similar to the one he earned as an intern but obtained annual increases of approximately $2,000. While in Boston, the parties' other two children were born. Thereafter, in 1994, the parties moved to Los Angeles for several months, where husband again earned a salary while obtaining additional training.

Of significance, when husband began his cardiology training in 1991, the parties decided that wife would not work outside the home. Instead, by mutual agreement, wife maintained the family home and had primary child-care responsibilities. By the end of husband's training in February 1995, the parties had four children, who were all under the age of six.

At the conclusion of husband's training, the parties moved to Minnesota where, according to husband, he "started * * * as a real doctor * * * making a salary." The parties remained in Minnesota until July 1998, when they moved to southern Oregon so that husband could take his current position as a cardiologist in a private clinic. The parties separated eight years later in March 2006.

By the time of trial in March 2008, the parties had essentially agreed on a custody arrangement and the division of their property.[3] As pertinent to this appeal, the disputed

---

[3] Our understanding is that the parties had accumulated approximately $1.2 million in assets, which they divided equally. Husband and wife each received approximately $589,000 in assets, including personal property, automobiles, various bank and retirement accounts, and the proceeds from the sale of the family

issue at trial was spousal support. The parties' evidence in that regard centered around two basic subsidiary issues—*viz.*, setting (1) husband's income and (2) wife's anticipated earning capacity, for purposes of calculating spousal support. We address the facts concerning each subsidiary issue in turn.

Husband's income in 2007 was approximately $233,457, composed of $180,000 in salary—that is, $15,000 per month—and $53,457 in bonuses based on his production as a partner in the clinic. However, before 2007, his income had been higher. Specifically, husband earned $335,960 in 2004, $369,583 in 2005, and $315,259 in 2006.

Bodager, the clinic's executive director, testified that the downward trend in husband's earnings was due, in part, to lower Medicare reimbursements and "an oversupply of cardiologists" in a community that was no longer growing.[4] Bodager testified that, for the next three years, husband should expect to receive an amount similar to what he earned in 2007. However, Bodager made no income projections after that three-year period, stating that, when making such projections, "[i]t is very difficult to go past 36 months." Apart from Bodager's testimony, there was no other evidence concerning whether and when husband's income might return to or exceed the level that preceded the parties' separation in 2006.

In terms of wife's earning capacity, as previously mentioned, wife had worked as a medical technologist and in research laboratories. 240 Or App at 658. Early in the marriage, wife had contemplated changing careers or obtaining

---

home. More particularly, with regard to the sale of the family home, the parties divided approximately $439,000 in equity, of which wife received over $364,000. She then purchased a new home.

[4] Specifically, Bodager explained:

"In 2006, the market changed dramatically. Providence hired two full-time physicians. We hired—Cardiology Consultants hired two new full-time physicians. And the Heart Clinic, who is our competitor, also hired a physician. So all of a sudden there was an oversupply of physicians in the market."

Nevertheless, the two cardiologists whom husband's clinic hired had become partners by the time of trial. Further, at trial in 2008, Bodager explained that, when those two physicians became partners, each experienced an approximate "$50,000 hit in compensation projected for this year just by becoming a partner. But they were willing to do that to secure themselves in the market."

an advanced degree so that she could do something involving greater "intellectual stimulation." Nevertheless, she and husband ultimately decided that it was in their family's best interests for her not to work outside the home. Of significance, at the time of trial, wife had been out of the workforce for 17 years and had not worked as a medical technologist for 24 years.

However, shortly before the parties separated, wife applied to a master's degree program in biology at Southern Oregon University. As husband explained:

"[Wife] had * * * fought with the issue about staying at home and wanting to work and being torn between kids and her professional interests and stimulation and * * * it was an opportunity to * * * re-challenge herself and re-stimulate herself. * * * [S]he put it off for a long time * * * until the kids were a bit older. And so it was just time to do that. She had contemplated other things * * * along the way and just none of it seemed to be right and going back to school seemed to be the right thing, so she went back to school."

Shortly after the separation, wife was accepted into the master's degree program and began taking one four-credit class each quarter. Wife recognized that other students were taking a heavier course load. Nonetheless, she planned to continue taking only one class each term until earning her degree because that was in the best interests of her teenage children, one of whom had personal issues that the family was attempting to address.

Although wife's original plan, of which husband was supportive, was to volunteer for a conservation agency after obtaining her new degree, she recognized, by the time of trial, that volunteering her services would not be feasible. Instead, wife understood that she needed to reenter the workforce and stated a preference for obtaining a job in her new field of study. Wife anticipated that, when she graduated in approximately three years, she would be able to obtain a job with the government, earning an estimated $36,000 per year.

Although husband acknowledged wife's occupational preference, he asserted that the pertinent issue for purposes of calculating spousal support was her earning

capacity, which would be greater if she returned to her prior occupation as a medical technologist. With regard to that issue, husband's expert, Potocki, a vocational rehabilitation manager and counselor, testified that, based on various factors, including wife's education and employment history, "if she were to re-train and upgrade her skills as a medical technologist, she could pretty fairly rapidly re-enter the labor market in that capacity after approximately one year." According to Potocki, the retraining would likely consist of "a 12-week program up in the Portland area" and then three to nine months of clinical work in a local hospital. Potocki estimated that the cost of such retraining might be as much as $7,600.[5] After such retraining, however, Potocki testified that the prospect of wife obtaining a job was "good" and that she could earn approximately $43,680 in the first year, $50,980 in the second and third years, and $57,470 thereafter.

Against that evidentiary backdrop, the parties presented their respective positions concerning spousal support to the trial court. Wife asserted that, in light of the fact that she had not been a medical technologist for 24 years and husband had been supportive of her plan to return to school to obtain her master's degree, her earning capacity should reflect what she will be able to earn when she obtains that degree in three years (*viz.*, $36,000 per year). Further, with regard to husband's income, wife contended that, because the downturn in husband's income was temporary, the court should "order a flat level support based upon what you conclude to be the income today and have it increase on the fourth year[.]" Ultimately, wife's attorney contended that, "in light of the current income and the projection," spousal support should be set somewhere between $7,000 and $8,000 per month indefinitely.

With regard to the nature of that support award, wife contended that 50 percent of the spousal support award should be "a combination of transitional and maintenance support," and the remaining 50 percent of the award should be designated as compensatory support pursuant to ORS

---

[5] The total retraining cost of $7,600 was itemized as $1,500 in tuition per quarter for three to four quarters (*i.e.*, $6,000), and $200 to $400 per quarter in books (*i.e.*, $1,600).

107.105(1)(d)(B). In particular, wife asserted that she was entitled to compensatory support because she

> "made significant financial contributions while Husband was in medical school, she gave up her own career opportunities (creating a loss of financial gain for herself), and, by staying home with four young children, Husband was able to pursue his medical career, working long hours without needing to worry about caring for children."

Although husband agreed "that some support is appropriate," he contended that wife's earning capacity should be figured based on what she could earn as a medical technologist. Relying on *Auld and Auld*, 72 Or App 747, 697 P2d 220 (1985), husband contended that he should not be required, by way of a spousal support obligation, to subsidize wife's choice to be underemployed. Further, husband contended that his income would "stay flat"—that is, in the future, he would continue to earn an income similar to that earned in 2007 (*i.e.*, $233,000). Ultimately, husband proposed a spousal support award of $50,000 per year for five years. Husband posited that none of that award should be designated as compensatory support because wife's receipt of half of an almost $1.2 million marital estate "clearly reflects any contribution wife made to husband's career."

In awarding wife transitional and maintenance support, the trial court made two predicate determinations. First, the court determined that "the estimate by [Bodager] of $225,000 per year income for [husband] for at least the next three years [is] a credible and uncontroverted estimate." Second, the court determined that wife's earning capacity should reflect what she could earn as a medical technologist—and not what she would earn upon completion of the master's degree program.

Ultimately, the trial court's judgment awarded wife "transitional and maintenance spousal support" in the amount of

> "$5,000.00 per month for the first three years (first, second, and third years);

> "$4,000.00 per month for the subsequent three years (fourth, fifth, and sixth years); and

"$2,000.00 per month for two years beyond that (seventh and eighth years)."[6]

However, the court refused to award compensatory support, reasoning that "no compensatory spousal support is necessary as that appears to have been adequately addressed by the division of the parties['] marital estate, although clearly [wife] contributed to the education and training of [husband] so as to enable [him] to enjoy an enhanced earning capacity."

On appeal, the parties present essentially the same contentions that they raised in the trial court concerning the spousal support award. Specifically, wife raises four assignments of error, all of which concern the nature, amount, and duration of the award. The gravamen of wife's assignments of error on appeal is that she is entitled to at least $7,000 per month as indefinite spousal support and that half of that award should be designated as compensatory support pursuant to ORS 107.105(1)(d)(B). Before considering the ultimate merits of wife's position, we address the two subsidiary issues on which the parties focused at trial—that is, the determination of (1) husband's income and (2) wife's earning capacity, for purposes of calculating spousal support.

With regard to husband's income, wife does not dispute the trial court's finding that husband's annual income was approximately $225,000. In fact, in her brief on appeal, she asserts that "[h]usband earns $18,750 per month"—that is, $225,000 per year. Accordingly, for purposes of calculating spousal support, we attribute to husband an annual income of $225,000.[7]

___

[6] In awarding transitional and maintenance support, the trial court did not identify the specific amount and duration of each of those types of support. Nevertheless, the trial court determined that wife would need $4,500 to retrain as a medical technologist. In light of that determination, we understand that the trial court's award includes $4,500 in transitional support and that the remainder of the award is necessarily maintenance support. Nonetheless, for purposes of our analysis and disposition, we treat the trial court's award as one for maintenance support for two reasons. First, the total amount of transitional support (*i.e.*, $4,500) is small when compared to the overall award (*i.e.*, $60,000 in annual support during the first three years). Second, on appeal, wife does not specifically contend that the trial court erred in its award of transitional support.

[7] Wife also contends, however, that, because husband's income had historically been higher than the $225,000 that he is projected to earn for each of the three years following the dissolution, and because his income will likely increase to those

With regard to wife's earning capacity, the trial court determined that, in light of our decision in *Auld*, wife should be attributed with the earning capacity of a medical technologist. In *Auld*, the wife was "employable as a real estate sales person and a school teacher"; however, she was not employed at the time of trial because she was studying to be an interior designer. 72 Or App at 751. The husband contended that the wife did "not *need* further education to become self supporting" and that, although the wife had "the right to change careers," it would be inequitable "to require him to pay for her career training for the third time." *Id.* (emphasis in original). We held that

> "[w]ife is young and healthy. She is employable and capable of self sufficiency without additional education. She has not been absent from the job market, and she has no long term financial obligations. We therefore modify the decree to eliminate spousal support."

*Id.*

■ In this case, we disagree with the trial court that *Auld* is dispositive of wife's earning capacity. Here, unlike in *Auld*, wife had been absent from the job market for 17 years—and had not worked as a medical technologist for

---

levels after that three-year period, an increase in spousal support is warranted in the fourth year. Specifically, she asserts:

> "Husband earned an annual income of over $300,000 for the years 2004 through 2006. It was projected that Husband's income for 2007 through 2010 would be approximately $225,000 per year. With historical earnings much greater than this 'projection,' and in consideration of Wife's inability under the current state of the law to seek a modification if Husband's income returns to its prior level, spousal support should increase after the three year 'projection' to avoid the inequitable result of Husband being able to return to a higher standard of living. [*See Weber and Weber*, 337 Or 55, 68, 91 P3d 706 (2004) (concluding that 'a post-dissolution increase in a payor spouse's income, unaccompanied by any showing of, for example, a change in the payee spouse's needs, is ordinarily not a substantial change in economic circumstances within the substantive meaning' of ORS 107.135(3)(a)).]"

We disagree with wife's contention because, regardless of its legal merits, it suffers from a fundamental factual flaw: There is no evidence in this record that husband's income will increase in the fourth year following the dissolution. Bodager, the clinic's executive director, made no income projections beyond the initial three-year period following the dissolution, and there was no other evidence concerning that issue. Further, to the extent that wife relies on the inference that the two new cardiologists in husband's clinic would not have become partners but for an assumption that it would be more prosperous for them, as well as the clinic, to do so, we reject that inference as unpersuasive and impermissibly speculative.

24 years. Before the separation, husband supported wife's plan to return to school so that she could earn a master's degree in biology. Thus, this is not a case in which husband is being required to subsidize wife's unilateral choice of a lower-paying career—rather, here, wife's earning capacity is merely being predicated on a continuation of the parties' pre-separation, mutually agreed course of action. Under such circumstances, we conclude that, in determining the proper configuration, amount, and duration of spousal support, we attribute to wife an income of approximately $36,000 after she completes her master's degree.

■    Having resolved those two predicate issues, we turn to the parties' legal contentions. At the outset, we observe that the legislature has established three categories of spousal support in ORS 107.105(1)(d) (*i.e.*, compensatory, transitional, and maintenance). In *Harris and Harris*, 349 Or 393, 416-17, 244 P3d 801 (2010), the Supreme Court recently explained that

> "each of the three categories of spousal support serves a different function. Transitional spousal support provides the temporary support needed for a spouse to obtain the training and education necessary for reentry into the job market. ORS 107.105(1)(d)(A). Spousal maintenance provides the financial support needed by a spouse for a specified or indefinite period, depending in part upon the financial needs and resources of each spouse. ORS 107.105(1)(d)(C). Compensatory support provides compensation to a spouse who has made a significant contribution, financial or otherwise, to the education, training, or career of the other spouse. ORS 107.105(1)(d)(B). Thus, the amount of support awarded under each category of spousal support is relevant and should be considered in determining the overall amount of spousal support that is just and equitable. Because each category of spousal support serves a different function, however, an award of spousal support under one or more of the categories should not generally serve to negate entirely an award of support under the other categories."

With those principles in mind, we turn first to wife's contention that the trial court erred in failing to award her compensatory support. We address that matter first for two reasons:

"First, the circumstances under which such an award can be modified are more limited than is the case with maintenance support. ORS 107.135(3)(a) [(providing, in part, that 'an order of compensatory spousal support may only be modified upon a showing of an involuntary, extraordinary and unanticipated change in circumstances that reduces the earning capacity of the paying spouse')]. Accordingly, a compensatory support award ordinarily is more secure. Second, the amount and duration of compensatory support will inform the extent to which a maintenance support award is necessary to allow wife to become financially independent and self-supporting."

*Hook and Hook*, 238 Or App 172, 183, 242 P3d 697 (2010).

ORS 107.105(1)(d)(B) governs the award of compensatory support. It provides that a court may order "compensatory support"

"when there has been a significant financial or other contribution by one party to the education, training, vocational skills, career or earning capacity of the other party and when an order for compensatory spousal support is otherwise just and equitable in all of the circumstances. The factors to be considered by the court in awarding compensatory spousal support include but are not limited to:

"(i)     The amount, duration and nature of the contribution;

"(ii)    The duration of the marriage;

"(iii)   The relative earning capacity of the parties;

"(iv)    The extent to which the marital estate has already benefited from the contribution;

"(v)     The tax consequences to each party; and

"(vi)    Any other factors the court deems just and equitable."

In *Harris*, the Supreme Court addressed the proper application of the ORS 107.105(1)(d)(B) factors. There, the parties, who were in their late thirties, had been married for approximately 16 years and had two children. 349 Or at 396, 397. The wife worked full time and assumed the larger portion of household and child-care responsibilities while the

husband attended dental school. *Id.* at 396. After the husband graduated and joined his father's dental practice, he became the primary wage-earner for the family, ultimately earning a substantial income that averaged between $355,000 and more than $407,000. *Id.* Shortly thereafter, the wife gave birth to their second child, left her employment, and assumed primary household and child-care responsibilities. *Id.* During the marriage, the parties acquired a significant property portfolio and lived a lavish lifestyle. *Id.* As pertinent for present purposes, the trial court in *Harris* did not award the wife any compensatory support on dissolution of the parties' marriage. *Id.* at 395.

On Supreme Court review, the issue was whether the trial court had erred in refusing to award the wife compensatory support because her contributions were " 'typical and expected,' " rather than " 'substantial,' " and because she would receive the benefit of any contributions from the property division. *Id.* at 398. The Supreme Court first held that the wife's employment and her household and child-care responsibilities were " 'significant contributions' to [the] husband's education and career sufficient to trigger consideration of a compensatory spousal support award" under the statute. *Harris*, 349 Or at 408.

■ The Supreme Court then concluded, based on the nonexclusive list of factors in ORS 107.105(1)(d)(B), that the wife was entitled to a compensatory support award. In particular, the court noted that, in considering "[t]he extent to which the marital estate has already benefited from the contribution," ORS 107.105(1)(d)(B)(iv), "the relevant inquiry is how much the marital estate has already realized the benefits of the spouse's contributions compared to how much the marital estate would ultimately realize as the benefits of those contributions." *Harris*, 349 Or at 414. Applying that standard, the court pointed to the husband's "remaining 17- to 27-year highly productive earning career," and concluded that "the significant asset distribution and comfortable lifestyle available to [the] wife for the 10 years preceding the divorce does not offset completely the contributions [the] wife made to [the] husband's education, career, and enhanced earning capacity." *Id.* at 415.

Finally, having concluded that the trial court should have awarded the wife compensatory support, the Supreme Court set the amount and duration of that award. In doing so, the court rejected the wife's contention that "the contributing spouse should be awarded compensatory spousal support in an amount that will fully realize all the benefits that the spouse would have obtained had the marriage lasted throughout the other spouse's entire earning career." *Id.* at 414. Instead, according to the court, "the correct answer lies somewhere in between." Ultimately, the Supreme Court concluded that an award of $2,000 per month in compensatory support for 10 years would be just and equitable under the circumstances. *Id.* at 417.

■     As in *Harris*, we begin here by determining whether wife's contributions to husband's "education, training, * * * career or earning capacity" were "significant" for purposes of ORS 107.105(1)(d)(B), so as to trigger an award of compensatory support. We conclude that they were. Here, wife's income was the predominant source of income for the parties as husband completed his final two years of medical school. Thereafter, while husband completed his three-year internship and residency, wife worked to supplement his modest income even after the birth of their two older children. Further, even though the parties eventually agreed that wife would leave the workforce to maintain the family home and assume primary child-care responsibilities, those contributions allowed husband to concentrate his attention on the completion of his cardiology training.

■     Having concluded that wife's contributions were "significant" within the meaning of the statute, we must determine whether the factors in ORS 107.105(1)(d)(B) militate in favor of an award of compensatory support. The parties' history as recounted above, 240 Or App at 658-60, establishes not only that wife contributed economically to the marital unit and the parties' growing family for many years, but also that she supported husband's efforts by moving the family and caring for their children so that he could concentrate on the completion of the necessary training in his medical specialty. Further, although the parties were married for over 20 years, husband's earning capacity as a cardiologist, to

which wife had made significant contributions, had been meaningfully realized only in the last decade preceding the separation, and husband will continue to have a highly productive earning career for at least another decade. Consequently, the property awarded to wife does not completely offset the contributions that wife made to husband's education, career, training, and enhanced earning capacity. Finally, there is great disparity between the relative earning capacities of the parties. Accordingly, we conclude that the factors in ORS 107.105(1)(d)(B) support an award of compensatory support and that the trial court erred in failing to make such an award.

■ In setting the amount and duration of the award, we reject, as did the court in *Harris*, wife's contention that the award should be indefinite—that is, that she should essentially receive compensatory support in an amount that will allow her to realize all of the benefits that she would have obtained had the marriage lasted until the end of husband's earning career. Because husband is in his late forties, we can expect that his earning career will last at least another decade. Accordingly, we conclude that an award of $2,000 per month in compensatory support for eight years is just and equitable under the circumstances.

Having concluded that wife is entitled to compensatory support of $2,000 per month for eight years, we return to wife's contentions concerning the amount and duration of the trial court's award of maintenance support. *See* 240 Or App at 663-64, 664 n 6 (describing the nature of the trial court's award). As previously indicated, the trial court awarded wife $5,000 per month for the first three years, $4,000 per month for the next three years, and $2,000 per month for two years thereafter. In particular, we understand wife to contend that support should be indefinite and that the total "amount of spousal support awarded was simply unjust and inequitable, and it should be increased to not less than $7,000 per month."

■ ORS 107.105(1)(d)(C) provides that the court may order "maintenance support"

"as a contribution by one spouse to the support of the other for either a specified or an indefinite period. The factors to

be considered by the court in awarding spousal maintenance include but are not limited to:

"(i)     The duration of the marriage;

"(ii)    The age of the parties;

"(iii)   The health of the parties, including their physical, mental and emotional condition;

"(iv)    The standard of living established during the marriage;

"(v)     The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi)    A party's training and employment skills;

"(vii)   A party's work experience;

"(viii)  The financial needs and resources of each party;

"(ix)    The tax consequences to each party;

"(x)     A party's custodial and child support responsibilities; and

"(xi)    Any other factors the court deems just and equitable."

In *Potts and Potts*, 217 Or App 581, 586, 176 P3d 1282 (2008), we explained that, "[i]n making a maintenance spousal support determination, no one factor is dispositive." (Internal quotation marks and brackets in original omitted.) However, we noted that, "in a long-term marriage * * * the primary goal of maintenance spousal support is to provide a standard of living comparable to that enjoyed during the marriage." *Id.*

■     Here, the parties were married for over 20 years, and, at the time of trial, the parties were relatively young and in good health. Although wife will likely be financially independent and self-supporting after obtaining her master's degree and transitioning back into the work force, her earning capacity will never begin to approach husband's earning capacity as a cardiologist. Moreover, although the record in this case sheds little light on the standard of living established during the marriage, it is evident that husband earned

a substantial income in the years before the parties separated. Thus, indefinite maintenance support is necessary to allow her to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage.

In sum, in light of the property division and the award of compensatory support, we conclude that, for the first three years following the dissolution, it is just and equitable to award wife maintenance support[8] of $5,000 per month so that, when combined with the compensatory award, the total spousal support award for that period will be $7,000 per month. Thereafter, for the next three years, the total support award shall be $6,000 per month, itemized as $4,000 in maintenance support and $2,000 in compensatory support. Then, for the next two years, the total support award shall be $5,000 per month, itemized as $3,000 in maintenance support and $2,000 in compensatory support. At the end of the eighth year following the dissolution, when the compensatory award expires, wife shall continue to receive $3,000 per month in maintenance support, which will continue indefinitely thereafter.

On appeal, reversed and remanded for entry of judgment (1) awarding wife compensatory spousal support of $2,000 per month for eight years and (2) maintenance spousal support of $5,000 per month for three years, $4,000 per month for the next three years, and $3,000 per month thereafter; otherwise affirmed. Affirmed on cross-appeal.

---

[8] *See* 240 Or App at 664 n 6 (describing the nature of the trial court's support award).