Argued and submitted May 21, 2014, affirmed April 1, petition for review denied July 9, 2015 (357 Or 550)

In the Matter of the Marriage of
Melanie Lisa LOGAN,
*Petitioner-Respondent,*
*and*
Bruce Scott LOGAN,
*Respondent-Appellant.*

Jackson County Circuit Court
082573D1; A152298

347 P3d 337

Laura Graser argued the cause and filed the briefs for appellant.

Russell Lipetzky argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

Husband appeals a dissolution judgment that, among other provisions, requires him to pay $4,000 a month in maintenance support to wife until 2027—by which time he will be nearly 79 years old. Husband, an oral surgeon, argues that the assumption underlying that award of spousal support—namely, that he will continue to work as a surgeon until age 79—is not supported by any evidence in the record. He further argues that it is not just and equitable to essentially force him to work until that age to pay the obligation. We affirm.

Except as otherwise noted, the facts relevant to the issue of spousal support are not disputed on appeal. Husband and wife married in 1989 and separated in 2007. At the time of trial in January 2012, husband was 63 and wife was 49. The parties' child was 17 at the time of trial and planned to begin college in the fall of 2012.[1] The parties stipulated that wife would have custody of the child and that husband would pay child support.

Throughout the marriage, husband worked as an oral surgeon. For most of that time, husband was in a partnership with other surgeons, but that partnership dissolved in 2009. As part of that dissolution, husband's partners gave him a choice: He could retire, enter into a noncompetition agreement, and receive a larger compensation package, or he could receive a smaller compensation package and continue working in the area. Husband chose the latter and started a solo practice in 2010, taking out a $1 million loan to start the practice. He submitted evidence that his income was approximately $40,000 per month at the time of trial, the majority of which (approximately $27,000) was from his solo practice; the remaining income came from rental income, interest income, and capital gains.

Wife worked as husband's surgical assistant until 1994, but she had not worked outside the home for most of the marriage. She presented evidence at trial that she would be able to earn slightly more than $2,200 per month,

---

[1] Husband has adult children from a previous marriage, and wife assisted in raising them when they were young.

and she sought indefinite maintenance support in addition to a share of the parties' considerable assets. She testified that she would also like for the court to require husband to maintain a life insurance policy in the event that she were to be awarded indefinite maintenance support, so that she would have "sort of a nest egg in the event something happened to him." Her counsel, in closing argument, concluded by highlighting the request for indefinite support:

> "So, again, we think that spousal support in the $12,000 range, I mean that's reasonable. *And if and when [husband] retires, then that may very well be a reason to take another look at it.* But in this long of a marriage, I mean all of the cases, whether it's [*Morrison and Morrison*, 240 Or App 656, 247 P3d 1281 (2011),] or all of the cases *talk about indefinite support and pretty significant support.*"

Until closing argument, there had been little mention of the possibility of husband's retirement. The only direct testimony on the subject came from wife, not husband. Wife's counsel asked her, "[H]ave the two of you, when you were living together, did you ever have discussions about how long he intended to work?" Wife answered:

> "We did. Because I had always wanted him to retire early and he would always tell me he was gonna work until he dies, or he was gonna work until he was in his seventies because of [their son]. So, I'm not really sure. He would go between he hated his work and that—but then he always wanted to work. So, it was confusing."

In trial memoranda, both husband and wife further addressed the duration of support. Wife argued that,

> "given the length of the marriage, the standard of living enjoyed during the marriage, and the extreme disparity in the parties' earning capacities, *an award of indefinite support is just and equitable. See [Morrison,* 240 Or App 656]. The goal of self-sufficiency is an important consideration, but in a long-term marriage such as this, where the parties should be separated on as equal a footing as possible, the relevant level of self-sufficiency is that which allows them to maintain a standard of living that is comparable to that enjoyed during the marriage."

(Emphasis added.) Husband, meanwhile, "propose[d] that he continue to pay Wife $6,000 per month until their son

begins college" and "[t]hereafter, support should be reduced to $4,000 per month for a finite term given the age of the parties and asset distribution." Husband's memorandum did not discuss the possibility of his retirement. Rather, he suggested that spousal support should take into account the fact that his income would be reduced once he was no longer being paid from the settlement with his previous partners.[2]

In a letter opinion dated February 8, 2012, the court explained its decision, which divided the parties' assets and addressed child and spousal support. With respect to spousal support, the court ruled that wife "can enjoy a standard of living not significantly disproportionate from the standard of living she enjoyed during the marriage, by receiving somewhere between $5,000 and $7,000 per month, depending on what other expenses she is incurring." The court awarded spousal support as follows:

"1.    $7,500 per month, beginning February 1, 2012, as transitional support.

"2.    $6,500 per month, beginning October 1, 2012. The spousal support is reduced because it is anticipated that Wife will experience fewer household expenses because the parties' child will be moving into a new residence at college.

"3.    Support will continue at $6,500 per month until September 1, 2017, at which time support will be reduced to $5,500 per month. All support received after September 1, 2017 is considered spousal maintenance.

"4.    Spousal support will continue after September 1, 2017 until September 1, 2020."

Wife subsequently asked the court to reconsider various parts of the decision, including the duration of spousal support, which she argued should have been indefinite. At a hearing on that motion, the court signaled its willingness to reassess spousal support:

"I guess the last issue is you asked for reconsideration on spousal support. And from looking quickly at the facts,

---

[2] Husband explained that "the accounts receivable payments [from his previous partnership] ceased as of August 2010. The stock redemption payments ceased in January 2011. The deferred compensation payments will continue for approximately seven years. The deferred compensation payment is $1,802 per month. These payments will cease in August 2017."

it's an 18 year—18 year relationship, and I gave her 10 and a half years of support, both pre and post-judgment. So, in looking at it again, I did come to the conclusion maybe I do want to re-examine that. Not that I'll change my mind, but it's not—I usually am—I usually, when it's 18 years or more it's—it does fall into the category of indefinite in many cases, but in some cases not."

At the hearing, husband's counsel pointed out that the trial court had "support going until my client is 72 years old. I mean, that's a considerable length." The court responded, "And that may have been what caused me to limit it at ten and a half years, he's gonna be in his early seventies." Wife's counsel countered that husband still had additional payments coming from his former partners, but the court explained that it had already taken that into account. The following colloquy ensued regarding those payments and the possibility of retirement:

"THE COURT:   Well, 84 payments, I think I took that into consideration, you know, that's seven years. So, seven years of payments. And so at some point that runs out and at some point he stops working. This comes up in a lot of cases, at what point do you require someone to keep working at what age? And it's really a case by case basis, but you've got to—you have to have a general rule as they approach their seventies and go into their seventies, they should be entitled to stop working and just rely on investment income or whatever they have.

"[HUSBAND'S COUNSEL]:   Well I think, Your Honor, I remember making this argument and discussing it with you at trial, and my position was, you put somebody who is his age, he's 63 at the time of trial going on 64, at a position of indefinite support, then he just has to work until he croaks because he can't retire because he—that's based upon the hope that he comes back into court and spousal support is reduced and it actually allows him to retire. Otherwise he's giving probably more than half of his income to retirement to his former second spouse.

"So, those are the kind of things I think we discussed in trial.

"THE COURT:   Well, and I just wanted to go back and look at the case law, especially on the age issue I think, and

see if—you know. If he were ten years younger, indefinite, or a longer period of time might be appropriate.

"* * * * *

"THE COURT: All I know is that the cases involving marriages of, you know, starting at about 15 years, they start being indefinite [support] from there on. Not all of them."

The day after that hearing, the trial court issued a letter opinion that adjusted the spousal support award. The court ruled that wife should receive "spousal support from September 1, 2020 to July 2027 (the month wife turns 65) in the sum of $4,000 per month." The court continued, "Of course, if circumstances change from those existing at the present time (e.g., husband decides to retire and begins earning less than his present income) the law allows husband to approach the court with a request to adjust the support obligation to match the changed circumstances." In a subsequent e-mail to the parties, the trial court explained that it had relied on *Finear and Finear*, 240 Or App 755, 762-63, 247 P3d 1238 (2011), *rev dismissed*, 351 Or 580 (2012), *Morrison*, 240 Or App 656, and *Bolte and Bolte*, 233 Or App 565, 226 P3d 116, *rev den*, 348 Or 523 (2010).

At that point, husband filed a motion for reconsideration, asking the court to look at appellate decisions that, according to him, militated against indefinite support. *E.g.*, *Berg and Berg*, 250 Or App 1, 5, 279 P3d 286 (2012) (affirming the trial court's award of five years of spousal support in a long-term marriage where, "[g]iven husband's age at the end of the trial (67), his health (husband had had prostate surgery and had previously suffered and recovered from a stroke), and the nature of his work [as a dentist], there is evidence from which the trial court could have found that it was unlikely that husband would work past the age of 72"). The court then held another hearing, and the parties addressed the import of our decision in *Berg*. Thereafter, the court issued another letter opinion that denied husband's motion for reconsideration. The court explained, in part:

"The *Berg* case also involved a husband who had medical issues which supported the court's conclusion to end

the support at age 72, five years after the judgment. In [this case], [husband] appears to be in good health and is actively involved in the line of work he has been developing skills for his entire adult life. The primary concern raised by counsel for [husband] is that [husband] may not continue to conduct his business for as long as the support obligation continues. In the opinion letter, the court explained that as that event arises, [husband] can certainly approach the court to ask for a reduction in the amount or duration of support based upon the circumstances then and there existing. Certainly, a person is entitled to retire from his life's work at an appropriate time and to not be required to continue to earn income at the same level after retirement."

The court then reduced its ruling to judgment, including a spousal support award until 2027, when husband will be nearly 79.

Husband appeals the dissolution judgment and raises two assignments of error, both of which challenge the spousal support award. In his first assignment of error, he argues that, "as a matter of law, the trial court erred in requiring an obligor, whose income is derived from working, to work full time as an oral surgeon until he is almost 79." Alternatively, in his second assignment, husband argues "that there is no evidence in the record that husband physically, mentally, and psychologically can work as an oral surgeon past the age of 72," and "[f]or that reason, this court should engage in limited *de novo* review, looking only to that portion of the record that concerns the requirement that husband pay spousal support from 2020 to 2027." In the event that there is no evidence in the record to support the court's ruling, husband urges us to "review the award to determine if it is just and equitable to end spousal support in 2020, or in 2027."

We begin with husband's second assignment of error, which concerns whether there is evidence to support an implicit finding that husband can and will work until he is age 79. According to husband, the record is devoid of evidence regarding how long he will work, and it is purely speculative to assume that he will work until he is

79.[3] We disagree. The trial court heard evidence that (1) husband had told wife that "he was gonna work until he dies, or he was gonna work until he was in his seventies because of [their son]," (2) husband had started a solo practice in 2010 and had taken out a $1 million loan to start the practice, and (3) the practice was becoming more profitable each year. From that evidence, the trial court reasonably could have found that husband had made a long-term investment in his business, had no immediate plans to retire from his profession, and could continue receiving income from the business well into his 70s.[4] Thus, we reject husband's second assignment of error.

Turning back to husband's first assignment, he argues that the trial court's spousal support award is "not just and equitable" because "the judgment, in effect, provides that husband cannot retire until he is either almost 79, or is disabled, and it requires these parties to be entangled, after a $2 million property award in 2012, and 15 years of spousal support, for an additional seven years." He argues that wife, who was only 49 at the time of dissolution, is allowed to "do absolutely nothing" other than rely on husband's support.

We have explained previously that "[t]he ultimate determination of what amount and duration of support is just and equitable is discretionary. *** We will not disturb the trial court's discretionary determination unless the trial court misapplied the statutory and equitable considerations required by ORS 107.105." *Berg*, 250 Or App at 2. Those considerations include "the duration of the marriage," the ages of the parties, the "standard of living established during the

---

[3] Husband attributes that void to being "sandbagged" by the trial court's ruling. He argues that the court "gave husband no warning, nor an opportunity to present evidence about why it is unrealistic to expect a person to work full time as an oral surgeon until he is almost 79." We disagree with that view of the record. The duration of spousal support was one of the issues in play at the original dissolution hearing, where wife was requesting *indefinite* support, and nothing prevented husband from offering evidence of his retirement plans or the professional longevity of oral surgeons during that hearing or, for that matter, asking the court to consider such evidence at the later hearings on reconsideration. Even at the later hearings, when the question of retirement was squarely before the court, husband's counsel argued only that he should not be forced to work—not that he, or oral surgeons generally, will retire at a particular age.

[4] Because there is evidence in the record to support the trial court's finding, we decline husband's request for a limited *de novo* review.

marriage," "[t]he relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property," and a party's "training and employment skills" and "work experience." ORS 107.105(1)(d)(A), (C). Here, the trial court's ruling demonstrates that it considered those factors, particularly the duration of the marriage, the ages of the parties, their standard of living and respective earning capacities, and what husband acknowledges is his own "exceptional earning power." The court's award, although generous to wife, falls well within the range of discretion accorded by the statutory scheme. *See Morgan and Morgan*, 269 Or App 156, 166, 341 P3d 81 (2015) ("Our role here * * * is not to make our own determination of the 'just and equitable' amount of spousal support.").

Husband's primary criticism of the award, which is that it "forces" him to work until age 79, is not borne out by the facts or the law. The judgment anticipates that husband will continue working through his 70s, but it does not prevent him from retiring earlier. A spousal support award is not unjust or inequitable simply because of the possibility that it will affect a later financial decision by the parties, including the timing of retirement or another career change. Indeed, we have affirmed awards of *indefinite* spousal support notwithstanding the fact that the parties' income was derived primarily from one spouse's employment. *See, e.g., Steele and Steele*, 254 Or App 79, 81-82, 293 P3d 1077 (2012) (affirming an award of indefinite spousal support of $4,200 per month "based on the duration of the marriage, wife's contribution to husband's advancement in his career and earning capacity, wife's custody of the younger child, the disparity in earning capacity between the parties, wife's unemployability, the tax consequences of the award to the parties, *and the limited marital estate*" (emphasis added)).

Rather, as the trial court correctly observed, Oregon's dissolution laws expressly account for the possibility that an unanticipated retirement decision might result in a "substantial change in economic circumstances of a party." ORS

107.135(3)(a). The statutory scheme authorizes a trial court to modify a spousal maintenance support award in that event, so long as the retirement decision is made in good faith. *See* ORS 107.135(4)(b) (where a motion to modify is opposed, the "court shall not find a change in circumstances sufficient for reconsideration of support provisions" if it is shown that the retirement decision "was not taken in good faith but was for the primary purpose of avoiding the support obligation"); ORS 107.135(4)(c) (setting out factors for discerning good-faith retirement decision). Nothing in the judgment prevents husband from seeking a modification in the event that he makes a good-faith decision to retire before his support obligations end. If anything, the trial court's anticipation that husband will continue working through his 70s, and its professed willingness to revisit support in the event that husband retires earlier than anticipated, should make it easier for husband to obtain a modification in that event. *See Wilson and Wilson*, 186 Or App 515, 522, 63 P3d 1244 (2003) ("[E]ven if husband's retirement was foreseeable when the parties' marriage was dissolved, the timing of its occurrence was speculative and, thus, it could not have affected his support obligations at that time. It follows that husband's post-dissolution early retirement constituted an unanticipated change of circumstances * * *.").

Affirmed.